FILED
**United States Court of Appeals
Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**February 2, 2024**

_____

**Christopher M. Wolpert
Clerk of Court**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TONY GARCIA, a/k/a Antonio
Garcia, a/k/a Antonio Cervantes
Garcia, a/k/a Antonio Garcia
Cervantes,

Defendant - Appellant.

No. 22-6182
(D.C. No. 5:20-CR-321-F-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

This appeal involves a defense attorney's motion to withdraw in a

criminal case. Attorneys may be allowed to withdraw when they can no

longer communicate with their clients. When a client alleges a breakdown

in communication, the district court must inquire. When a court inquires

and the attorney says that she can still communicate adequately with the

---

[*]     This order and judgment does not constitute binding precedent except
under the doctrines of law of the case, res judicata, and collateral estoppel.
But the order and judgment may be cited for its persuasive value if
otherwise appropriate. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

client, does the court abuse its discretion by denying the motion to withdraw without asking further questions? We answer *no*.

## I.    Mr. Garcia's attorney moves to withdraw.

The highway patrol stopped Mr. Tony Garcia for traffic violations, saying that he was driving over 100 miles per hour and changing lanes without signaling. The traffic stop led to a search of Mr. Garcia's car, where the highway patrol found roughly 29 pounds of methamphetamine and a gun. This discovery led to criminal charges.[1]

Two days before trial was to begin, the defense attorney moved to withdraw, saying that her decision not to seek suppression of evidence had led to a communication breakdown with Mr. Garcia.

## II.    The district court disallows withdrawal after asking defense counsel about her ability to communicate with her client.

On the morning of trial, the district court addressed the motion. The court started by questioning Mr. Garcia, who confirmed that the disagreement involved his attorney's decision not to file a motion to suppress. The court then asked Mr. Garcia if he wanted to add anything. Mr. Garcia responded by saying that

- he had only recently seen the police's report on the traffic stop and

---

[1]    The charges were conspiracy to possess methamphetamine with the intent to distribute, possession of methamphetamine with intent to distribute, and possession of a firearm in furtherance of a drug-trafficking offense. 21 U.S.C. §§ 841(a)(1), 846; 18 U.S.C. § 924(c)(1)(A).

- that report showed that his attorney could have successfully challenged the traffic stop.

Supp. R. vol. 1, at 4.

The court then asked Mr. Garcia's attorney about her ability to communicate with Mr. Garcia and the status of her preparation for trial. The attorney denied any "concerns about being able to talk with Mr. Garcia." *Id.* at 10. The attorney also responded to questions about her preparation for trial, stating that she

- had "several substantive conferences" with Mr. Garcia in the weeks before trial, both in person and over the telephone,

- had reviewed the documents produced in pretrial discovery,

- had consulted another attorney about whether to move to suppress,

- had prepared for the trial by meeting with Mr. Garcia in person over the previous weekend, and

- had a "reasonably good understanding" of the anticipated testimony of the government's witnesses, the government's reports, and topics for cross-examination.

*Id.* at 5–13.

With these responses, the district court denied defense counsel's motion to withdraw for five reasons:

1.      Mr. Garcia's counsel was highly skilled.

2.      There was "a serious problem with the timeliness of this motion, although that [was] far from the only basis for [the] ruling."

3

3.    Mr. Garcia's dissatisfaction involved his counsel's decision not to file a pretrial motion rather than any upcoming decisions involving the trial itself.

4.    Mr. Garcia's counsel had been diligent.

5.    The district court and the attorneys had already cleared their schedules for the trial, and the witnesses and case agent were ready to proceed.

*Id.* at 14–18.

The district court then selected a jury. But when jury selection ended, defense counsel renewed her motion to withdraw:

> Just to renew the motion to withdraw at this point based upon . . . the difficulties of continuing in communication at this point; and so I would renew the motion to withdraw on the basis that was cited in -- in the argument this morning and then on continuing challenges posed by attorney-defendant communication at this point in the proceedings.

Supp. R. vol. 3, at 81. The district court denied the motion again.

## III.    The district court did not err in denying Mr. Garcia's counsel's motion to withdraw.

Withdrawal of counsel may be justified when the attorney's ability to communicate with the client has completely broken down. *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002). The district court concluded, however, that Mr. Garcia remained able to communicate adequately with the attorney. So the court denied the attorney's motion to withdraw.

### A.    We review the ruling for an abuse of discretion.

This Court reviews this ruling for an abuse of discretion. *Id.* In assessing the district court's exercise of discretion, we consider whether

4

the conflict between the attorney and client had been severe and pervasive enough to prevent "meaningful communication." *Id.* To determine whether meaningful communication remained possible, the court needed to consider

- the timeliness of the motion to withdraw,

- the defendant's reasons for wanting new counsel,

- the potential for the breakdown in communication to prevent an adequate defense, and

- the possibility that the defendant had substantially and unreasonably contributed to the breakdown in communication.

*Id.* at 1250.

**B.    The district court did not abuse its discretion in denying the first motion to withdraw.**

Mr. Garcia argues that the district court erred when denying the first motion to withdraw by

- regarding the motion as late,

- failing to adequately inquire into the breakdown in communication,

- observing that the disagreement didn't involve the trial itself,

- considering the effectiveness of defense counsel, and

- considering the inconvenience from a change in counsel.

We reject these arguments.

5

1. **The district court didn't err by considering the timing of the motion**.

Mr. Garcia contends that the motion wasn't late because he had just seen the police report a few days earlier.

The district court's discussion of timeliness does not show an abuse of discretion. The court needed to consider the timing of the motion when assessing the effect of a change in counsel. *See United States v. Beers*, 189 F.3d 1297, 1302 (10th Cir. 1999) (stating that "[c]ourts have to 'balance the need for efficient administration of the criminal justice system against the defendant's right to counsel'" (quoting *United States v. Padilla*, 819 F.2d 952, 956 (10th Cir. 1987)). The court did so, noting that an order granting the motion would delay the proceedings when trials were being "rationed" in the midst of a worldwide pandemic. Supp. R. vol. 1, at 17.[2]

Mr. Garcia argues that he acted as soon as he could after seeing the police report. But the court didn't assign fault for the delay. Rather than assign fault, the court simply

- noted that the timing of the motion had created a "serious problem" and

- clarified that the timing was not dispositive.

---

[2]    The court explained that the pandemic prevented the judges from having more than two juries in the courthouse at one time. Supp. R. vol. 1, at 17.

6

*Id.* at 16. Though Mr. Garcia argues that he acted as soon as he could, he doesn't say why his diligence undermines the district court's reasoning. We thus have little reason to disturb the ruling based on the court's comment about the timing of the motion.[3]

### 2. The district court didn't err by failing to inquire further into the breakdown in communication.

Mr. Garcia contends that the district court erred by failing to inquire further to see if there had been "a true communications breakdown." Appellant's Opening Br. at 20. We disagree.

"[T]he fundamental requirement is that the district court's inquiry uncover the nature of the defendant's concerns." *United States v. Vargas*, 316 F.3d 1163, 1166 (10th Cir. 2003). Defense counsel explained Mr. Garcia's concern stating that

- he was upset that defense counsel hadn't moved to suppress evidence and

- "this breakdown in their relationship and ability to communicate appear[ed] irremediable."

R. vol. 2, at 81. So the court conducted a hearing to question both Mr. Garcia and the attorney about these concerns. At the hearing, Mr. Garcia had a chance to say whatever he wished about his ability to communicate

---

[3]    Mr. Garcia's attorney told the district court that she and Mr. Garcia had reviewed the police report in the first round of discovery. Supp. R. vol. 1, at 6. Regardless of whether we credit Mr. Garcia's version or his attorney's, the district court appropriately considered the motion's proximity to trial.

7

with his attorney. The attorney then explained that she no longer doubted her ability to communicate with the client. *See* p. 3, above. The district court could reasonably find from these accounts that the disagreement wasn't great enough to prevent communication. *See United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002).

Mr. Garcia contends that the court should have asked follow-up questions. Despite this contention, the district court had no bright lines on how deeply to probe. *See United States v. Vargas*, 316 F.3d 1163, 1166 (10th Cir. 2003) ("There can be no bright lines drawn as to what constitutes 'adequate' inquiry.").

The attorney provided thorough answers to the court's questions, and the court asked Mr. Garcia himself if "[t]here [was] anything else" he would like to say. Supp. R. vol. 1, at 4. In response, Mr. Garcia complained that he hadn't seen the police report earlier; but he provided no further information about his ability to communicate with his attorney. *Id.* Given the open-ended nature of the court's question, Mr. Garcia had ample opportunity to explain his problems in communicating with his attorney.[4]

In light of this questioning of both Mr. Garcia and defense counsel, the district court did not err in declining to ask other questions. *See*

---

[4]    "[T]here is no evidence that [Mr. Garcia] was too confused or intimidated by the legal trappings of the proceeding to speak up." *United States v. Vargas*, 316 F.3d 1163, 1166 (10th Cir. 2003). Indeed, Mr. Garcia spoke up and said why he was upset with the attorney.

*Vargas*, 316 F.3d at 1166–67 (concluding that the court had not erred in denying a motion to substitute counsel when the defendant declined to further address the issue).

### 3. The district court didn't err by observing that the disagreement didn't involve a current strategic decision.

The district court observed that the disagreement involved a past tactical decision (the decision not to seek suppression of evidence) rather than the trial itself. Based on this observation, Mr. Garcia asserts that "the court was incredulous that a criminal defendant facing an imminent trial would remain concerned about what his attorney litigated pretrial." Appellant's Opening Br. at 24.

We disagree with this characterization of the district court's comments. The court didn't question the sincerity of Mr. Garcia's concern. Rather, the court simply commented that "the most relevant" aspects of counsel's representation at that point concerned handling of the trial itself. Supp. R. vol. 1, at 16. This comment reflected the court's focus on the ability of the defendant and his counsel to communicate during the trial itself. This comment doesn't suggest a misunderstanding of the appropriate inquiry.[5]

---

[5] Mr. Garcia also argues that he wasn't to blame for the breakdown in communication. Appellant's Opening Br. at 25. But the district court never suggested otherwise.

4.    **The district court didn't err by noting the effectiveness of defense counsel.**

Mr. Garcia also criticizes the district court for putting weight on the effectiveness of his trial attorney. The court did refer to the quality of defense counsel, but the court also probed the ability of Mr. Garcia and his attorney to communicate. The court didn't err by referring to the quality of defense counsel.

Mr. Garcia points out that attorneys might remain effective even when they're completely unable to communicate with their clients. *See United States v. Lott*, 310 F.3d 1231, 1252 (10th Cir. 2002). The court didn't suggest otherwise. To the contrary, the court simply commented that the defense attorney was very effective. That comment didn't suggest that the court was downplaying the importance of communication just because the attorney was good. *See United States v. Anderson*, 189 F.3d 1201, 1210 (10th Cir. 1999) (upholding the denial of a motion for substitution of counsel based on a conflict when the district court expressed its belief that "trial counsel was highly competent and effective and would represent [the client] as well as anyone could").

5.    **The district court didn't err by referring to fairness and practicality**.

Finally, Mr. Garcia challenges the district court's reliance on the logistical problems from a last-minute change in counsel, arguing that (1) the prosecution witnesses were government employees who could still

10

testify at a later trial date and (2) substitution wouldn't delay any of the other trials already scheduled.

The court's comments didn't suggest an abuse of discretion. The court, its staff, and the prosecution had prepared for Mr. Garcia's trial. The court was simply noting the logistical problems from a last-minute change in counsel.

Mr. Garcia downplays these problems, stating that other cases could have proceeded as scheduled. But if the district court had permitted withdrawal, the court would have needed to reschedule the trial. Mr. Garcia responds that "what's-done-is-done." Appellant's Reply Br. at 5–6. But the district court could consider the need to reshuffle future trials if the court were to let Mr. Garcia's counsel withdraw. *See United States v. Herrera*, 51 F.4th 1226, 1280 (10th Cir. 2022) (upholding the denial of a continuance because it could require "reshuffling" of trials, disrupting preparation and delaying future trials). Given the reasonableness of this concern, the district court's reference to logistical problems doesn't suggest an abuse of discretion.

### C.    The district court didn't abuse its discretion in denying the renewed motion to withdraw.

Mr. Garcia also points to the denial of his counsel's renewed motion to withdraw. When jury selection ended, defense counsel renewed her motion to withdraw "based upon the difficulties of continuing in

communication at this point" and "on the basis that [had been] cited in . . . the argument this morning and then on continuing challenges posed by attorney-defendant communication at this point in the proceedings." Supp. R. vol. 3, at 81. In Mr. Garcia's view, these comments showed that a breakdown in communication had continued during jury selection.

The district court did not abuse its discretion in denying the renewed motion to withdraw. Although Mr. Garcia's attorney referred to "difficulties of continuing in communication," *id.*, she did not identify any new facts. The district court could thus have viewed the renewed motion as a repetition of the arguments that defense counsel had made before jury selection. With this view, the district court acted within its discretion when denying the renewed motion to withdraw.

* * *

We thus affirm the denial of defense counsel's motion to withdraw.

Entered for the Court


Robert E. Bacharach
Circuit Judge